IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JAMES GARDNER, individually and on behalf of all those similarly situated,** | Case No. 1:15-cv-12320-RWZ |
| **Plaintiff,** | |
| **v.** | |
| **DRAFTKINGS, INC., a Delaware corporation,** | |
| **Defendant.** | |

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND DISMISS PROCEEDINGS</u>**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

II.     FACTUAL BACKGROUND ................................................................................. 2

    A.   Plaintiff Agreed To Arbitrate Any Disputes Regarding His Use Of The Website ....................................................................................................... 2

    B.   Plaintiff Ignores His Agreement To Arbitrate And Improperly Files Suit ............. 3

III.    LEGAL STANDARD .......................................................................................... 4

IV.     ARGUMENT ...................................................................................................... 5

    A.   Plaintiff Must Arbitrate His Claims Against DraftKings On An Individual Basis ......................................................................................................... 5

    B.   Plaintiff Cannot Avoid His Agreement To Arbitrate ............................................. 7

    C.   The Court Should Dismiss The FAC As All Claims Are Subject To Arbitration .................................................................................................. 17

    D.   DraftKings Should Be Awarded Its Attorneys' Fees and Expenses Incurred In Enforcing Arbitration .................................................................. 17

V.      CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACE Ltd. v. Cigna Corp.*,
  No. 00-9423, 2001 WL 1286247 (S.D.N.Y. Oct. 22, 2001) ................................... 18

*Am. Express Co. v. Italian Colors Restaurant*,
  133 S. Ct. 2304 (2013) .................................................................................... 2, 14

*Apollo Computer v. Berg*,
  886 F.2d 469 (1st Cir. 1989) ......................................................................... 5, 6, 7

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) ..................................................................................... 6, 14

*Awuah v. Coverall N. Am., Inc.*,
  554 F.3d 7 (1st Cir. 2009) ...................................................... 4, 5, 6, 7, 8, 9, 19

*Awuah v. Coverall N. Am., Inc.*,
  703 F.3d 36 (1st Cir. 2012) .................................................................................. 10

*Bagg v. HighBeam Research, Inc.*,
  862 F. Supp. 2d 41 (D. Mass. 2012) .................................................................. 10

*Bercovitch v. Baldwin Sch., Inc.*,
  133 F.3d 141 (1st Cir. 1998) ............................................................................... 17

*Buckeye Check Cashing, Inc. v. Cardegna*,
  126 S. Ct. 1204 (2006) ................................................................... 8, 9, 10, 15

*Byrd v. SunTrust Bank*,
  No. 12-02314, 2013 WL 3816714 (W.D. Tenn. July 22, 2013) ........................... 11

*Cadillac Auto. Co. v. Engeian*,
  339 Mass. 26 (1959) ............................................................................................ 16

*Cerna v. Prestress Servs. Indus. LLC*,
  No. 10-188, 2011 WL 1884547 (N.D. Ind. May 18, 2011) .................................. 14

*Conway v. CLC BIO, LLC*,
  32 N.E.3d 330 (Mass. App. Ct. 2015) ................................................................ 15

*Cormier v. Central Mass. Chapter of Nat'l Safety Council*,
  416 Mass. 286 (1993) .......................................................................................... 15

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ............................................................................................... 6

*Deaton v. Overstock.com, Inc.*,
  No. 07-CV-643, 2007 WL 4569874 (S.D. Ill. Dec. 27, 2007) ............................... 6

*Farnsworth v. Towboat Nantucket Sound, Inc.*,
  790 F.3d 90 (1st Cir. 2015) ................................................................................... 8

*Feeney v. Dell Inc.*,
  993 N.E.2d 329 (Mass. 2013) .............................................................................. 14

ME1 21079398v.1

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Grand Wireless, Inc. v. Verizon Wireless, Inc.*,
748 F.3d 1 (1st Cir. 2014) ................................................................................. 4

*Harter v. Iowa Grain Co.*,
220 F.3d 554 (7th Cir. 2000) ........................................................................... 18

*Ibrahim v. Morton's Restaurant Grp., Inc.*,
No. 04-20554, 2005 WL 6068544 (S.D. Fla. Mar. 16, 2005) ................................. 18

*Jacobs v. U.S. Fid. & Guar. Co.*,
417 Mass. 75 (1994) ...................................................................................... 13

*Joule, Inc. v. Simmons*,
No. SUCV200904929A, 2011 WL 7090714 (Mass. Sup. Ct. Dec. 5, 2011) .......... 12

*Kristian v. Comcast Corp.*,
446 F.3d 25 (1st Cir. 2006) ............................................................................. 16

*Laughton v. CGI Tech. & Sols., Inc.*,
602 F. Supp. 2d 262 (D. Mass. 2009) ........................................................ 13, 14

*Lewis v. Capo Grp., Inc.*,
No. 12-10965-RWZ, 2012 WL 6589237 (D. Mass. Dec. 17, 2012) ................... 8, 9

*Linguistic Sys., Inc. v. U.S. Pharma. Convention, Inc.*,
No. 07-10021-DPW, 2009 WL 723343 (D. Mass. Mar. 11, 2009) ...................... 16

*Machado v. System4 LLC*,
28 N.E.3d 401 (Mass. 2015) ...................................................................... 16, 17

*Marie v. Allied Home Mortg. Corp.*,
402 F.3d 1 (1st Cir. 2005) ................................................................................. 5

*McGrath & Co. v. PCM Consulting, Inc.*, No. 11-10930-DJC,
2012 WL 503629 (D. Mass. Feb. 15, 2012) ....................................................... 6

*McInnes v. LPL Fin. LLC*,
466 Mass. 256 (2013) ..................................................................................... 15

*Next Step Med Co. v. Johnson & Johnson Int'l*,
619 F.3d 67 (1st Cir. 2010) ............................................................................. 17

*Nicosia v. Amazon.com, Inc.*,
No. 14-4513, 2015 WL 500180 (E.D.N.Y. Feb. 4, 2015) ................................... 11

*Pazol v. Tough Mudder, Inc.*,
--- F. Supp. 3d ----, 2015 WL 1815685 (D. Mass. Apr. 22, 2015) ................. 6, 10

*PowerShare, Inc. v. Syntel, Inc.*,
597 F.3d 10 (1st Cir. 2010) ............................................................................. 13

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) ................................................................................ 8, 9, 11

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) ......................................................................................... 11

ME1 21079398v.1

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Robinson v. Dean Witter Reynolds, Inc.*,
129 F.R.D. 15 (D. Mass. 1989) .......................................................................... 2, 18

*Schwartz v. CACH, LLC*,
No. 13-12644-FDS, 2014 WL 298107 (D. Mass. Jan. 27, 2014) ............................... 2

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987) ................................................................................................ 2

*Sims v. Clarendon Nat'l Ins. Co.*,
336 F. Supp. 2d 1311 (S.D. Fla. 2004) ................................................................. 14

*Small Justice LLC v. Xcentric Ventures LLC*,
--- F. Supp. 3d ----, 2015 WL 1431071 (D. Mass. Mar. 27, 2015) ......................... 12

*St. Fleur v. WPI Cable Sys./Mutron*,
879 N.E.2d 27 (Mass. 2008) ................................................................................. 10

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) .................................................................. 10

*Taylor v. First N. Am. Nat'l Bank*,
325 F. Supp. 2d 1304 (M.D. Ala. 2004) ............................................................... 11

*United States v. Dwinells*,
508 F.3d 63 (1st Cir. 2007) ..................................................................................... 6

*World Gym, Inc. v. Pla-Fit Franchise, LLC*,
No. 12-11620-DJC, 2013 WL 3830164 (D. Mass. July 19, 2013) ...................... 8, 17

**Statutes**

9 U.S.C. § 1 ............................................................................................................. 1, 3

9 U.S.C. § 2 ................................................................................................................... 6

iv

Defendant DraftKings, Inc. ("DraftKings") respectfully petitions this Court, pursuant to the Federal Arbitration Act ("FAA") (9 U.S.C. § 1, et seq.), for an order compelling individual arbitration of each of the claims raised by Plaintiff James Gardner ("Plaintiff") in accordance with the terms of the parties' binding arbitration agreement.

## I.       INTRODUCTION AND SUMMARY OF ARGUMENT

The entire premise of Plaintiff's lawsuit (which he seeks to bring on behalf of a nearly nationwide class) is that he was allegedly deceived by advertisements that offered to match the $10 he initially deposited into his online fantasy sports account with DraftKings.  The matching bonus program did indeed provide Plaintiff with the ability to "double" his initial $10 deposit, and the terms Plaintiff agreed to—before even making his deposit—explained that the matching bonus would be released to Plaintiff after he participated in paid fantasy sports contests.  Plaintiff is nonetheless upset because he was not provided the entire $10 matching bonus ***immediately*** upon his deposit.  Common sense alone would prevent anyone from believing he could simply deposit $10, be awarded $10, and then immediately withdraw $20 from the fantasy sports account, without ever having to participate in any contests.  Given that the terms of the offer were spelled out for him, Plaintiff has no basis to expect anything other than what occurred.

But this Court need not, and should not, consider Plaintiff's baseless claims because the Terms of Use to which Plaintiff agreed expressly require the parties to submit "any and all disputes" between them to binding, non-class arbitration before the American Arbitration Association ("AAA").  (*See* First Am. Compl. ("FAC") Ex. G at 251.)  Accordingly, DraftKings asked Plaintiff to voluntarily dismiss his putative class action and pursue individual arbitration as the Terms of Use demand, but Plaintiff refused, requiring DraftKings to now move this Court to enforce the arbitration agreement that Plaintiff refuses to honor.  There is no valid reason for Plaintiff to resist arbitration in light of the parties' agreement and the Supreme Court's directive

1

that courts should "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *see also Am. Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013) ("courts must 'rigorously enforce' arbitration agreements according to their terms"); *Schwartz v. CACH, LLC*, No. 13-12644-FDS, 2014 WL 298107, at *2 (D. Mass. Jan. 27, 2014) ("[C]ourts are consistently mindful of the strong federal policy favoring arbitration."). Plaintiff's willful disregard of the binding arbitration provision and governing law not only warrants dismissal in favor of arbitration, but also an award of the attorneys' fees and expenses incurred to bring this Motion. *See, e.g., Robinson v. Dean Witter Reynolds, Inc.*, 129 F.R.D. 15, 21 (D. Mass. 1989) (imposing Rule 11 sanctions for resisting arbitration); *see also* FAC Ex. G at 252 (Terms of Use provide that the party refusing arbitration shall pay "all attorneys' fees and expenses reasonably incurred in enforcing" the arbitration agreement).

DraftKings therefore requests that this Court grant this Motion, dismiss Plaintiff's lawsuit, and require Plaintiff to reimburse DraftKings for its reasonable attorneys' fees and expenses incurred to compel arbitration.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff Agreed To Arbitrate Any Disputes Regarding His Use Of The Website

Before Plaintiff could use the DraftKings website and make his $10 deposit, he was first required to review and accept the Terms of Use that govern the website and the parties' relationship. (Dent Decl. ¶¶ 2-4.) The Terms of Use to which Plaintiff agreed contained an arbitration provision, under which both DraftKings and Plaintiff agreed that any and all disputes between them would be resolved in a binding, non-class arbitration (or in an individual action brought in small claims court). The arbitration provision further states that any party disregarding the provision would bear the costs and attorneys' fees incurred to compel compliance with the arbitration agreement:

2

Any and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the Website (including all commercial transactions conducted through the Website) ("Claims"), except for claims filed in a small claims court that proceed on an individual (non-class, non-representative) basis, shall be settled by binding arbitration before a single arbitrator appointed by the American Arbitration Association ("AAA") in accordance with its then governing rules and procedures, including the Supplementary Procedures for Consumer-Related Disputes, where applicable.

\* \* \*

This arbitration undertaking is made pursuant to and in connection with a transaction involving interstate commerce, and shall be governed by and construed and interpreted in accordance with the Federal Arbitration Act at 9 U.S.C. Section 1, et seq.  This arbitration provision shall survive termination of this Agreement[.] . . .  Any and all claims shall be arbitrated on an individual basis only, and shall not be consolidated or joined with or in any arbitration or other proceeding involving a Claim of any other party.  You and DraftKings agree that the arbitrator shall have no authority to arbitrate any Claim as a class action or in any other form other than on an individual basis.

In the event that either party initiates a proceeding involving any Claim other than an arbitration in accordance with this Section, or initiates a proceeding involving a Claim under this Section other than in the Forum, the other party shall recover all attorneys' fees and expenses reasonably incurred in enforcing this Agreement to arbitrate and the Forum to which the parties have herein agreed.

(FAC Ex. G. at 251-52.)

Plaintiff agreed to these Terms of Use when he registered his DraftKings account on April 6, 2015.  (FAC Ex. G; *see also* Dent Decl. ¶¶ 2-4.)  Plaintiff could not deposit funds or use the website *until* he first affirmatively assented by clicking the "I agree to the Terms of Use and the Privacy Policy" button.  (Dent Decl. ¶¶ 2-4.)

## B.  Plaintiff Ignores His Agreement To Arbitrate And Improperly Files Suit

Despite his agreement to the arbitration provision, Plaintiff initiated this putative class action on June 12, 2015.  Plaintiff then filed the FAC on August 5, 2015, purportedly on behalf of a class of residents of 42 states asserting the following claims:  (1) breach of contract; (2) common law fraud; (3) unjust enrichment; (4) money had and received; (5) violations of 35

states' consumer protection statutes; and (6) declaratory relief regarding the Terms of Use. (FAC ¶¶ 77, 86-90; 91-97; 98-103; 104-109; 110-144; 145-163.)  Plaintiff predicates these claims on a theory that DraftKings' offer to double his initial $10 deposit was allegedly deceptive because the offer was subject to certain terms and conditions.[1]

After receiving a pre-suit demand letter from Plaintiff, DraftKings promptly informed Plaintiff's counsel that rather than proceed in court, the dispute must be arbitrated in accordance with the Terms of Use.  (Neyman Decl. ¶ 3, Ex. B.)  Plaintiff, however, refused DraftKings' request to arbitrate.  (*See* Dkt. No. 11.)  As a result of Plaintiff's insistence on improperly proceeding in this forum despite the parties' agreement to arbitrate, DraftKings is now required to request this Court to compel arbitration.

### III.   LEGAL STANDARD

Under both federal and Massachusetts law, a party is compelled to arbitrate his dispute against another party when (1) "a valid agreement to arbitrate exists," (2) the movant is "entitled to invoke the arbitration clause," (3) "the other party is bound by that clause," and (4) "the claim asserted comes within the clause's scope." *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 6 (1st Cir. 2014).

When the arbitration agreement allows the arbitrator to decide questions of arbitrability, disputes over the validity and scope of the arbitration agreement must be resolved by the arbitrator. *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009) ("[V]alidity of an arbitration clause is itself a matter for the arbitrator where the agreement so provides.") (citing

---

[1] DraftKings vigorously disputes Plaintiff's allegations, and, as Plaintiff necessarily acknowledges in his own FAC, DraftKings plainly describes the terms of its double deposit offering with clear disclosures.  (FAC ¶¶ 35, 39, & Ex. C.)  But because this dispute should be resolved by an arbitrator, DraftKings will not burden the Court here with a description of the fatal flaws with Plaintiffs' factual allegations and legal claims.

4

*Apollo Computer v. Berg*, 886 F.2d 469, 473-74 (1st Cir. 1989)).  The First Circuit has held that

an arbitration clause referencing the AAA rules, like the clause at issue here (*see* FAC Ex. G at

251-52; *see also supra*, p. 3), demonstrates that the parties have "explicitly [] affirm[ed] the

arbitrator's authority to decide challenges to the 'validity of the arbitration agreement.'"  *Awuah*,

554 F.3d at 11; *Apollo*, 886 F.2d at 473 (holding that the arbitration agreement between the

parties delegated to the arbitrator "decisions about the arbitrability of disputes involving the

existence and validity of a *prima facie* agreement to arbitrate").  In such circumstances, the only

questions for the Court are whether there is an agreement to arbitrate, *Apollo*, 886 F.2d at 473,

and whether the party seeking to compel arbitration has waived its right to do so.  *Marie v. Allied

Home Mortg. Corp.*, 402 F.3d 1, 13-14 (1st Cir. 2005) (holding that the issue of whether a party

waived his right to arbitrate is for the court to decide).

## IV.    ARGUMENT

### A.    Plaintiff Must Arbitrate His Claims Against DraftKings On An Individual Basis

There is no disputing that Plaintiff agreed to DraftKings' Terms of Use, that the Terms of

Use require the parties to arbitrate, and that DraftKings has not waived its right to arbitration.

Indeed, the FAC devotes six pages to arguing about the Terms of Use (*see* FAC ¶¶ 60-

74), but does not dispute that Plaintiff agreed to those terms when he registered his account.  (*See

id.*; *see also* Dent Decl. ¶¶ 2-4.)  The FAC does not dispute that the Terms of Use require that

"[a]ny and all disputes, claims or controversies arising out of" any "use of the [DraftKings]

Website . . . except for claims filed in a small claims court that proceed on an individual (non-

class, non-representative) basis, shall be settled by binding arbitration"—in fact, the FAC

actually recites that provision.  (FAC ¶ 71; *see id.* Ex. G at 251.)  Moreover, Plaintiff repeatedly

alleges facts demonstrating that Plaintiff's claims "arise out of" his "use of the Website":

Plaintiff made his initial deposit of $10 through the DraftKings website (*id.* ¶ 2), used that initial

deposit to pay entry fees to enter multiple DraftKings fantasy contests through the website (*id.* ¶ 48), and asserts he would need to enter additional contests on the DraftKings' website to receive the bonus (*id.* ¶¶ 49-51).  Finally, there is no allegation that DraftKings has waived its right to arbitrate Plaintiff's dispute, nor can there be one.  Even before it was served with the Complaint and Summons in this case, DraftKings responded to Plaintiff's initial demand letter by stating that Plaintiff must pursue the dispute, if at all, in arbitration.  (Neyman Decl. ¶ 3, Ex. B.)

Because there is an arbitration agreement that governs the dispute between the parties, and because DraftKings has not waived enforcement of that agreement, Plaintiff must arbitrate his claims.  *Awuah*, 554 F.3d at 11; *Apollo*, 886 F.2d at 473.  That is especially so in light of the FAA's[2] strong federal policy favoring arbitration, and the Supreme Court's holding that the FAA "leaves no place for the exercise of discretion by a district court, [and] instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) ("[C]ourts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms.").

---

[2]  The Federal Arbitration Act ("FAA") governs arbitration agreements, like the one at issue here, affecting interstate commerce.  9 U.S.C. § 2, *et seq.*  Here, the Terms of Use to which the parties agreed affect interstate commerce because the agreement governs an interstate transaction between Plaintiff and Defendant made over the Internet.  It is well-settled that the Internet is an instrumentality of interstate commerce.  *See, e.g., United States v. Dwinells*, 508 F.3d 63, 65 (1st Cir. 2007); *McGrath & Co. v. PCM Consulting, Inc.*, No. 11-10930-DJC, 2012 WL 503629, at *6 (D. Mass. Feb. 15, 2012) (collecting cases).  Federal courts have then applied the FAA to agreements made over the Internet, such as the one between Plaintiffs and DraftKings.  *Pazol v. Tough Mudder, Inc.*, --- F. Supp. 3d ----, 2015 WL 1815685, at *1-2 (D. Mass. Apr. 22, 2015) (applying the FAA to a participant agreement made over the Internet); *see also Deaton v. Overstock.com, Inc.*, No. 07-CV-643, 2007 WL 4569874, at *2 (S.D. Ill. Dec. 27, 2007) (applying the FAA to a sale made over the Internet).

**B.      Plaintiff Cannot Avoid His Agreement To Arbitrate**

Because Plaintiff's dispute plainly is the type of case that must be arbitrated under the

Terms of Use, the FAC devotes much of its focus to arguing that the entire Terms of Use are

invalid, and therefore the arbitration provision in the Terms of Use should not be enforced.  But

Plaintiff's attempts are misguided both as a matter of procedure and substance.  Procedurally,

questions of validity of the agreement between the parties are for an arbitrator to decide because

the parties agreed to delegate that issue to the arbitrator.  And even if this Court were the proper

audience for Plaintiff's grievances, the arguments still fail substantively because they contort the

Terms of Use and read them out of context.

**1.      Questions Regarding Validity Of The Arbitration Clause Are For The Arbitrator**

Plaintiff's argument that his agreement to arbitrate is invalid is a contention that must be

heard by the arbitrator, not this Court.  By selecting the AAA rules (*see* FAC ¶ 71), the parties

have "explicitly [] affirm[ed] the arbitrator's authority to decide challenges to the 'validity of the

arbitration agreement.'"  *Awuah*, 554 F.3d at 11; *see also id.* (the First Circuit "has said expressly

that the validity of an arbitration clause is itself a matter for the arbitrator where the agreement so

provides.") (citing *Apollo Computer*, 886 F.2d at 473-74).

The Terms of Use specifically provide that the arbitration between the parties shall

proceed "before a single arbitrator appointed by the American Arbitration Association ("AAA")

in accordance with its then governing rules and procedures, including the Supplementary

Procedures for Consumer-Related Disputes. . . ."  (FAC ¶ 71.)  Rule 14 of those procedures

provides that "***the arbitrator shall have the power to rule on*** his or her own jurisdiction,

including ***any objections with respect to the existence, scope or validity of the arbitration***

***agreement***."  (Neyman Decl., Ex. B, at p. 17 of Ex. A to letter.)  The First Circuit has concluded

that when the parties invoke a rule like this, all questions of validity must be delegated to the arbitrator. *Awuah*, 554 F.3d at 9; *see also Lewis v. Capo Grp., Inc.*, No. 12-10965-RWZ, 2012 WL 6589237, at *3 n.2 (D. Mass. Dec. 17, 2012) (noting that the parties agreed to delegate questions of scope to the arbitrator where the arbitration agreement referred to a rule providing arbitrators with such jurisdiction). In the Circuit's view, "[t]his is about as ***'clear and unmistakable' as language can get***," *Awuah*, 554 F.3d at 11 (emphasis added), leaving no doubt that Plaintiff's challenges to the validity of the arbitration clause should be raised before the arbitrator, not this Court. Accordingly, the Court need not, and should not, consider the arguments set forth in the FAC (or any that Plaintiff may offer in response to this motion) regarding the validity of the agreement to arbitrate. *Id.*

Moreover, even if the parties had not selected the AAA rules, Plaintiff's challenges to the validity of the Terms of Use as a whole would nonetheless be for the arbitrator to decide. Plaintiff argues the Terms of Use "do not constitute a valid, mutual agreement" for various reasons (*see* FAC ¶ 63), but as the Supreme Court has held, "a challenge to the validity of the contract as a whole . . . must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204, 1210 (2006); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (holding that the FAA "does not permit the federal court to consider" challenges, *e.g.* "fraud in the inducement," to "the contract generally"); *Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, 96 (1st Cir. 2015) ("challenges to the validity of an entire contract which contains an arbitration clause . . . . are for the arbitrator to decide[.]"); *World Gym, Inc. v. Pla-Fit Franchise, LLC*, No. 12-11620-DJC, 2013 WL 3830164, at *4 (D. Mass. July 19, 2013) (plaintiffs' claim that entire contract was fraudulently induced must be referred to

ME1 21079398v.1

the arbitrator); *Lewis*, 2012 WL 6589237, at *2 (holding that "[a] claim that the entire contract is void for fraudulent inducement [] does not invalidate an arbitration clause.").

> **2.      Even If It Were Proper For The Court To Consider Plaintiff's Validity Challenges, They Nevertheless Would Fail**

In light of the governing precedent, and the fact that the Parties agreed that an arbitrator should decide all questions of validity, it would be improper for this Court to adjudicate any of Plaintiff's challenges to the validity of the Terms of Use. *Buckeye*, 126 S. Ct. at 1208; *Prima Paint*, 388 U.S. at 403-04; *Awuah*, 554 F.3d at 11; *see also supra* pp. 7-9. Accordingly, the Court should send the matter to the arbitrator to decide whether the Terms of Use are invalid. But even if this Court were to consider this issue, Plaintiff's arguments nevertheless fail.

**Plaintiff's Challenges To The Form Of The Agreement Fail**. Several paragraphs of the FAC allege that the Terms of Use because they are presented on a "long web page," which Plaintiff disparages as a "maze of text" that he finds "difficult" to read. (FAC ¶¶ 60, 61, 71.) Putting the hyperbole aside, the Terms of Use provide a plain statement that explains that arbitration is required for claims not proceeding in small claims court. (*Id.* Ex. G at 251 ("Any and all disputes, claims or controversies arising out of or relating to this Agreement[,] except for claims filed in a small claims court . . . shall be settled by binding arbitration before a single arbitrator appointed by the American Arbitration Association").) Further, Plaintiff affirmatively clicked that he agreed with the Terms of Use when he signed up for DraftKings. (*See* Dent Decl. ¶¶ 3-4 .) Moreover, online agreements like the one Plaintiff entered into with DraftKings (sometimes referred to as "modified clickwrap agreements"[3]) are valid and fully enforceable as a

---

[3]   Courts have categorized situations "in which the customer must take affirmative action—pressing a 'click' button" to agree to terms of use that "are available with the use of hyperlink," as modified clickwrap agreements. *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149-50 (D. Colo. 2012); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910, 911-12 (N.D. Cal. 2011)

*(Cont'd on next page)*

matter of law.  *Pazol v. Tough Mudder Inc.*, --- F. Supp. 3d ----, 2015 WL 1815685, at *2 (D. Mass. Apr. 22, 2015) (compelling arbitration and holding that "clickwrap agreements are commonly enforced in Massachusetts and Federal Courts."); *Bagg v. HighBeam Research, Inc.*, 862 F. Supp. 2d 41, 45 (D. Mass. 2012) (noting clickwrap agreements "routinely" are held to be "valid and enforceable."); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (enforcing arbitration provision "in light of recent caselaw holding that clickwrap presentations providing a user with access to the terms of service and requiring a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button, are sufficient").

Plaintiff's suggestion that Plaintiff did not read or understand the Terms of Use, notwithstanding his agreement to them, has never been grounds for avoiding an agreement.  "In Massachusetts courts, it has long been the rule that typically, one who signs a written agreement is bound by its terms whether he reads and understands them or not."  *Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 44 (1st Cir. 2012) (quoting *St. Fleur v. WPI Cable Sys./Mutron*, 879 N.E.2d 27, 35 (Mass. 2008)).

**<u>Plaintiff's Challenges To The Amendment Clause Fail</u>**.  Plaintiff further alleges that a clause allowing DraftKings the discretion to amend the provisions of the Terms of Use at a later date renders the entire agreement illusory.  (FAC ¶¶ 68-69.)  Again, as noted above, challenges to the validity of the entire contract are for the arbitrator to decide.  *Buckeye*, 126 S. Ct. at 1210 ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration

---

*(Cont'd from previous page)*

(categorizing a situation "where the terms of service are not visible on the page but instead are linked by the blue hyperlink within a smaller grey font following the 'Allow' button" as a modified clickwrap agreement).

ME1 21079398v.1

clause, ***must*** go to the arbitrator.") (emphasis added); *Rent-A-Center, W., Inc. v. Jackson*, 561

U.S. 63, 70 (2010) ("[A] party's challenge to another provision of the contract, or to the contract,

as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."); *Prima*

*Paint Corp.*, 388 U.S. at 404 ("[A] federal court may consider only issues relating to the making

and performance of the agreement to arbitrate.").  Here, in challenging the provision in the

DraftKings Terms of Use governing amendments, Plaintiff claims that the *entire* contract as a

whole is illusory and invalid—precisely the type of challenge that the aforementioned authorities

hold must be preserved for the arbitrator.  *See id.*; *see also, e.g., Taylor v. First N. Am. Nat'l*

*Bank*, 325 F. Supp. 2d 1304, 1315 (M.D. Ala. 2004) (holding that in accordance with *Prima*

*Paint*, whether the existence of a unilateral amendment provision renders the entire contract

illusory was for the arbitrator to decide); *Nicosia v. Amazon.com, Inc.*, No. 14-4513, 2015 WL

500180, at *8 (E.D.N.Y. Feb. 4, 2015) ("[I]llusoriness is an issue reserved for the arbitrator.").[4]

    Even were it proper for the Court to reach this issue, which it is not, Plaintiff's bald

assertions regarding the supposed unfairness of this clause are unfounded.  DraftKings does not

have the ability to force users to accept amended terms because the amendment provision states

that any changes to the Terms of Use will only apply if the user assents to them by continuing to

use the service.  (FAC Ex. G. at 252 ("If you continue to use the Services after [DraftKings]

---

    [4] Plaintiff's challenges to the provisions that allow DraftKings to terminate the relationship with a user
(FAC ¶¶ 63, 67), and deny services to any user (*id.* ¶ 66), are likewise directed to the validity of the
Terms of Use as a whole and are for the arbitrator, not the Court, to decide.  *Supra* p. 8; *see also, e.g.,*
*Byrd v. SunTrust Bank*, No. 12-02314, 2013 WL 3816714, at *6 (W.D. Tenn. July 22, 2013) (holding
that plaintiff's challenge to defendant's termination provision as wholly illusory "challenges the
contract as a whole and not the Arbitration Clause specifically," and therefore is "within the
arbitrator's ken and is for the arbitrator to decide") (internal quotations omitted).   Even if the Court
were to consider the validity of these challenges, Plaintiff fails to allege that DraftKings either
terminated its agreement with him or that he was denied any DraftKings services.  As a result,
Plaintiff cannot point to anything illusory or unenforceable about either the termination provision or
the denial of services provision.  *Cf. Small Justice LLC v. Xcentric Ventures LLC*, --- F. Supp. 3d ----,
2015 WL 1431071, at *5 n.3 (D. Mass. Mar. 27, 2015).

change[s] the Terms of Use, you accept all changes.").)  A DraftKings user is always free to discontinue using the service and thereby avoid any amendment he or she does not like. Further, this issue is not ripe for decision in any event since there is no allegation in the FAC that DraftKings actually has amended any terms that impact Plaintiff.  Notably, other courts in this District have refused to find that a unilateral amendment clause renders Terms of Use illusory when there is no allegation that the Terms of Use have been materially changed during the relevant time period.  *See, e.g., Small Justice LLC v. Xcentric Ventures LLC*, --- F. Supp. 3d ----, 2015 WL 1431071, at *5 n.3 (D. Mass. Mar. 27, 2015) ("Without a change to the terms that affected that Plaintiffs' rights or remedies, the Court is not persuaded the contract was illusory."); *Joule, Inc. v. Simmons*, No. SUCV200904929A, 2011 WL 7090714, at *4-5 (Mass. Sup. Ct. Dec. 5, 2011) (holding that company's unilateral right to modify the contract was insufficient to prevent the enforcement of the arbitration agreement).  Because Plaintiff does not allege that DraftKings ever changed its terms and conditions in any way that affected his "rights or remedies" during the relevant time period, and he therefore fails to allege there is anything illusory or unenforceable about the amendment provision in DraftKings' Terms of Use.  *Small Justice LLC*, 2015 WL 1431071, at *5 n.3.

**Plaintiff's Arguments That The Terms Of Use Are Internally Inconsistent Fail**.

Plaintiff's argument that certain clauses in the Terms of Use conflict with the arbitration provision relies on contorting the Terms of Use and reading them out of context.  (FAC ¶¶ 70, 72, 147, 160 ("At one place, [DraftKings] claim[s] that any claim or dispute must be resolved in an individual arbitration proceeding, at another that any claim or dispute must be resolved in a court of competent jurisdiction.").)  Under Massachusetts law, not only must a court "resolve any doubts concerning the scope of arbitrable issues in favor of arbitration," *Laughton v. CGI Tech.*

12

& *Sols., Inc.*, 602 F. Supp. 2d 262, 264 (D. Mass. 2009), but "an interpretation which gives a reasonable meaning to all of the provisions of a contract is [also] to be preferred to one which leaves a part useless or inexplicable." *Jacobs v. U.S. Fid. & Guar. Co.*, 417 Mass. 75, 77 (1994); *cf. PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 16 (1st Cir. 2010) ("In deciding whether this language mandates arbitration . . . . we strive for a reasonable interpretation of the Agreement as a whole, while avoiding constructions that would render any term within it meaningless.").

In *Laughton*, the court firmly rejected an argument that allegedly conflicting provisions of an agreement required interpreting the agreement in a way that rendered the arbitration provision invalid.  "The correct reading" of the two allegedly conflicting provisions, the court held, was to reconcile them, and the Court did so in favor of arbitration.  602 F. Supp. 2d at 265. Plaintiff here similarly points to separate provisions that are easily reconcilable and can be read in favor of arbitration.  The arbitration provision, which appears under the conspicuous heading "ARBITRATION, CONSENT TO JURISDICTION IN MASSACHUSETTS, ATTORNEY'S FEES," states that it applies to "[a]ny and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the Website . . . except for claims filed in a small claims court that proceed on an individual (non-class, non-representative) basis." (FAC, Ex. G at 251.)  In the subordinate section that immediately follows, titled "MISCELLANEOUS," the Terms of Use State that "[a]ny claim or dispute between you and DraftKings that arises in whole or in part from the Terms of Use, the Website or any Contest shall be decided exclusively by a court of competent jurisdiction located in Suffolk County, Massachusetts."  (*Id.* at 252.)  In light of the structure of the Terms of Use, and the fact that the arbitration provision recognizes that certain claims will not be subject to arbitration (such as individual small claims actions), the most sensible reading of the "Miscellaneous" provision is

13

that it clarifies that any claims not subject to the immediately preceding arbitration provision will

need to be brought within a court of competent jurisdiction in Suffolk County.  There is then

neither conflict nor confusion over the scope of the arbitration clause—and the Court should read

the agreement in a way that favors arbitration rather than renders the provision a nullity.

*Laughton*, 602 F. Supp. 2d at 265; *see also Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d

1311, 1319 (S.D. Fla. 2004) ("A primary rule of contract interpretation is that where provisions

in an agreement appear to be in conflict, they should be construed so as to be reconciled if

possible[.]") (internal quotations and citation omitted); *Cerna v. Prestress Servs. Indus. LLC*, No.

10-188, 2011 WL 1884547, at *7 (N.D. Ind. May 18, 2011) ("The court must accept an

interpretation of the contract that harmonizes its provisions, rather than one that places the

provisions in conflict.").

**Plaintiff's "Unconscionability" Challenges Fail**.  To the extent Plaintiff contends that

the requirement he pursue his claims individually in a non-binding, non-class arbitration renders

the arbitration clause unconscionable (*see* FAC ¶ 70), the Supreme Court has already rejected

that argument.  *Am. Express*, 133 S. Ct. at 2309 ("[C]ourts must 'rigorously enforce' arbitration

agreements according to their terms, including terms that 'specify *with whom* [the parties] choose

to arbitrate their disputes, and the rules under which that arbitration will be conducted.") (internal

quotations and citations omitted); *Concepcion*, 131 S. Ct. at 1751 (holding that a "switch from

bilateral to class arbitration" without explicit consent is fundamentally inconsistent with the

FAA's substantive provisions).

In accordance with Supreme Court precedent, Massachusetts courts have upheld

arbitration agreements containing class action waivers.  *See, e.g., Feeney v. Dell Inc.*, 993 N.E.2d

329, 331 (Mass. 2013) (holding that class action waivers cannot invalidate arbitration agreements

"on the ground that it effectively denies the plaintiffs a remedy"); *see also Conway v. CLC BIO, LLC*, 32 N.E.3d 330, 335 (Mass. App. Ct. 2015) ("A private agreement to arbitrate in a contract in interstate commerce is governed by the [FAA], which ***supersedes State law that conflicts with its terms***.") (emphasis added).  This is equally true in cases invoking consumer protection statutes, specifically Massachusetts General Law chapter 93A.  *See, e.g., McInnes v. LPL Fin. LLC*, 466 Mass. 256, 257 (2013) (holding that chapter 93A, section 9, cannot preclude a court from compelling arbitration of a consumer claim due to the preemptive effect of the FAA).  Any assertion Plaintiff may make regarding the "unconscionability" of the class action waiver he assented to would impermissibly conflict with established precedent.

Furthermore, Plaintiff's suggestion that the release of liability provision is unconscionable (FAC ¶¶ 64–65) is not only a question that should be referred to the arbitrator, *see Buckeye*, 126 S. Ct. at 1210, but is also meritless.  Under Massachusetts law, a contract is not considered unconscionable even where the release of liability is "comprehensive" and absolves a party of "any and all liability, loss, damage, costs, claims/and or causes of action, including but not limited to all bodily injuries."  *Cormier v. Central Mass. Chapter of Nat'l Safety Council*, 416 Mass. 286, 288 (1993) (internal quotations deleted).  Here, Plaintiff had an opportunity to read the release, and he voluntarily agreed to the Terms of Use; the fact that Plaintiff was required to "sign the release before" participating in fantasy sport contests therefore "does not make the release unconscionable."  *Id*. at 288-89.[5]

---

[5]   Plaintiff's more generalized assertions that the Terms of Use are "unconscionable" are equally meritless.  *Storie v. Household Int'l, Inc.*, No. 03-40268-FDS, 2005 WL 3728718, at *9 (D. Mass. Sept. 22, 2005) (Under Massachusetts law, "[t]he test [for unconscionability] is a conjunctive one; [p]laintiff must prove both substantive and procedural unconscionability to prevail on this theory.");  *Bose Corp. v. Ejaz*, 732 F.3d 17, 23 (1st Cir. 2013).  The arbitration clause at issue is mutual, reciprocal, and provides for arbitration before a recognized and respected organization—the AAA.  Under the governing rules, DraftKings will even pay for the arbitrator's compensation.  (Neyman

*(Cont'd on next page)*

**Plaintiff's Invalidity Challenges Do Not Trump The Severability Clause**.  Under

Massachusetts law, "'it is well settled that if the part of a contract . . . which is valid, can be

separated from that which is void, and carried into effect, it may be done.'"  *Linguistic Sys., Inc.*

*v. U.S. Pharma. Convention, Inc.*, No. 07-10021-DPW, 2009 WL 723343, at *10 (D. Mass. Mar.

11, 2009) (quoting *Cadillac Auto. Co. v. Engeian*, 339 Mass. 26, 30 (1959)).  Here, the parties

clearly intended to preserve their agreement in the event that certain portions of the Terms of Use

cannot be enforced:  "If any provision of these Terms of Use is deemed invalid by a court of

competent jurisdiction, the invalidity of such provision shall not affect the validity of the

remaining provisions of these Terms of Use, which shall remain in full force and effect."  (FAC

Ex. G at 252.)  In such circumstances, courts regularly enforce the terms of the arbitration

agreement that are not in question, and sever any problematic provisions.  *Kristian v. Comcast*

*Corp.*, 446 F.3d 25, 53 (1st Cir. 2006) (holding that in the event that certain provisions are found

illegal or unenforceable, like a prohibition against the award of attorneys, "such provisions can

and should be excised, saving the unoffending provisions"); *see also Machado v. System4 LLC*,

28 N.E.3d 401, 415 (Mass. 2015) ("[E]ven if [the Court] were to find any of the discussed

provisions unconscionable, the [] agreements contain a severability clause, requiring any

unenforceable term to be severed.").

Severing any unenforceable provision would not only be consistent with Massachusetts

law and the parties' agreement, but also with the strong policy in favor of arbitration.  *See*

*Kristian*, 446 F.3d at 62 (noting that by severing an unenforceable provision and "saving the

---

*(Cont'd from previous page)*

Decl., Ex. B, attachment A to letter at 33.)  That is hardly the type of unreasonableness or unfairness
required in order to negate an agreement on the grounds of unconscionability.  In any event, as
described above, these are issues for the arbitrator to decide.

arbitral forum" was "an outcome consistent with the federal policy favoring arbitration").

Accordingly, even if the Court were to consider any of Plaintiff's validity challenges, those

challenges would not provide a bar to arbitration because any unconscionable, problematic

provision could be severed and the parties ordered to proceed to arbitration as they agreed.

*Machado*, 28 N.E.3d at 415.

**C.      The Court Should Dismiss The FAC As All Claims Are Subject To Arbitration**

Plaintiff has brought no claim that is not subject to arbitration.  When every claim raised

in a complaint is subject to arbitration, courts will couple their grant of a petition to compel with

an order dismissing the complaint, as no claims remain pending before the court.  *Next Step Med.*

*Co. v. Johnson & Johnson Int'l*, 619 F.3d 67, 71 (1st Cir. 2010) ("[I]n this circuit a district court

can, in its discretion, choose to dismiss the law suit, if *all* claims asserted in the case are found

arbitrable.") (citing *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998))

(emphasis added); *World Gym, Inc.*, 2013 WL 3830164, at *3 (same).

Accordingly, DraftKings respectfully requests that the Court both grant its petition to

compel arbitration and dismiss the FAC in its entirety.

**D.      DraftKings Should Be Awarded Its Attorneys' Fees and Expenses Incurred In
         Enforcing Arbitration**

Despite DraftKings' attempts to obtain Plaintiff's voluntary consent to arbitrate, Plaintiff

selected a path of litigation, requiring both DraftKings and this Court to needlessly expend time

and money to ensure compliance with a clear and unambiguous arbitration provision.  In

accordance with the Terms of Use, Plaintiff's conduct warrants an award of the attorneys' fees

and costs required to bring this Motion:

> In the event that either party initiates a proceeding involving any Claim other than
> arbitration in accordance with this Section, or initiates a proceeding involving a
> Claim under this Section other than in the Forum, the other party shall recover all

> attorneys' fees and expenses reasonably incurred in enforcing this Agreement to
> arbitrate and the Forum to which the parties have herein agreed.

(FAC Ex. G at 252.)  Although the First Circuit has not addressed this type of fee-shifting clause,

federal courts in many other jurisdictions have enforced similar provisions.  *See, e.g., Harter v.*

*Iowa Grain Co.*, 220 F.3d 544, 557 (7th Cir. 2000) (upholding the award of attorneys' fees and

costs of litigating in federal court because the arbitration provision provided for them); *Ibrahim*

*v. Morton's Restaurant Grp., Inc.*, No. 04-20554, 2005 WL 6068544, at *2 (S.D. Fla. Mar. 16,

2005) (holding that defendants were entitled to reasonable attorneys' fees because "the

Arbitration Agreement was valid and Plaintiffs cite[d] no legal reason why clause four, awarding

attorneys' fees in litigation to compel arbitration, should [have been] severed"); *ACE Ltd. v.*

*Cigna Corp.*, No. 00-9423, 2001 WL 1286247, at *1 (S.D.N.Y. Oct. 22, 2001) (enforcing award

of attorneys' fees and expenses incurred in seeking to compel arbitration because arbitration

agreement expressly provided for such costs).

An award of fees is appropriate for reasons independent of the parties' agreement, too.

As this court held in *Robinson*, an award of sanctions is proper when (1) plaintiff's opposition to

a motion to compel arbitration is "not warranted by existing law or by a good faith argument for

the extension, modification, or reversal of existing law," and (2) plaintiff's counsel "would have

discovered this deficiency had he made a 'reasonable inquiry[.]'"  129 F.R.D. at 21.

Here, Plaintiff and his counsel were unquestionably aware that the Terms of Use

contained a binding arbitration clause.  (*See* FAC ¶¶ 70-71, 147, 160, Ex. G at 251-52).  While

Plaintiff's FAC attempts to argue that the entire agreement is invalid (and thus the clause

unenforceable), there is binding, on-point authority from both the United States Supreme Court

and the First Circuit demonstrating that those challenges are not grounds to refuse arbitration.

(*Supra* pp. 7-9.)  Plaintiff either deliberately ignored these authorities or did not make a

reasonable effort to discover them before filing.  Either warrants an award of sanctions under *Robinson*.

## V.      CONCLUSION

The portions of DraftKings' Terms of Use calling for arbitration of Plaintiff's dispute "is about as 'clear and unmistakable' as language can get." *Awuah*, 554 F.3d at 11.  Moreover, the entire premise of this action is that Plaintiff deposited $10.00 through the DraftKings website, and he allegedly is unhappy with his use of the website because he did not immediately receive a $10.00 bonus upon registering with the website.  The Court should order this matter to arbitration, dismiss these frivolous claims, and award DraftKings its attorneys' fees and expenses incurred to compel Plaintiff to comply with the obvious terms of the arbitration agreement.

DATED:  September 1, 2015

Respectfully submitted,

DraftKings, Inc.

By their attorneys,
MCCARTER & ENGLISH, LLP

By: /s/ Eric Neyman
Eric Neyman (BBO # 564803)
eneyman@mccarter.com
Nicholas W. Allen (BBO # 663409)
nallen@mccarter.com
265 Franklin Street
Boston, MA 02110
(617) 449-6500

GIBSON, DUNN & CRUTCHER LLP

James P. Fogelman (*pro hac vice* pending)
Austin Schwing (*pro hac vice* pending)
Timothy W. Loose (*pro hac vice* pending)
333 South Grand Avenue
Los Angeles, CA 90071-3197

ME1 21079398v.1

## <u>CERTIFICATE OF SERVICE</u>

I, Eric Neyman, certify that on this 1st day of September, 2015, this document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

/s/ Eric Neyman
Eric Neyman

20