IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAMES GARDNER individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 15-cv-12320-RWZ |
| v. | ) ) | |
| DRAFTKINGS, INC., a Delaware corporation, | ) ) | Class Action |
| Defendant. | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS PROCEEDINGS

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................ 1

II.     NATURE OF THE CASE ........................................................................................... 2

III.    LEGAL STANDARD.................................................................................................. 6

IV.     ARGUMENT............................................................................................................... 6

    A.      Whether the Terms of Use Are a Binding Contract Is an Issue for the Court........ 6

    B.      DraftKings Has Not Established That Its Promises Were Anything But Illusory,
            and Therefore Has Not Shown That the Terms of Use Are a Contract................... 8

    C.      The Terms of Use Require that Any Claim Be Asserted in a Court of Competent
            Jurisdiction...................................................................................................... 13

    D.      DraftKings' Terms of Use Are Both Substantively and Procedurally
            Unconscionable ............................................................................................... 15

        1.      The Terms of Use Are Substantively Unconscionable Because They Are
                Completely One-Sided in that DraftKings Can Revoke All User Rights
                and Users Are Unable To Bring Any Claim To Enforce The Agreement 16

        2.      The Terms of Use Are Procedurally Unconscionable Because Plaintiff
                Had No Meaningful Choice and Was Subject to Unfair Surprise ............ 17

        3.      Severing the Unconscionable Provisions Is Not Possible Because
                Fundamental Elements of the Arbitration Provision Are at Issue ............ 19

V.      CONCLUSION......................................................................................................... 20

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Almeida v. Travelers Ins. Co.,*
   383 Mass. 226 (1981) ............................................................................................ 13

*American Surety Co. v. Rosenthal,*
   206 Misc. 485, 133 N.Y.S2d 870 (N.Y.Sup.Ct.1954) ............................................ 19

*AT&T Mobility LLC v. Concepcion,*
   563 U.S. 333 (2011) ............................................................................................... 15

*Awuah v. Coverall N. Am., Inc.,*
   554 F.3d 7 (1st Cir. 2009) ........................................................................................ 8

*Awuah v. Coverall N. Am., Inc.,*
   703 F.3d 36 (1st Cir. 2012) ...................................................................................... 8

*Braintree Labs., Inc. v. Citigroup Global Markets, Inc.,*
   671 F. Supp. 2d 202 (D. Mass. 2009) ...................................................................... 6

*Buckeye Check Cashing, Inc. v. Cardegna,*
   546 U.S. 440 (2006) ................................................................................................. 7

*Commercial Movie Rental, Inc. v. Larry Eagle, Inc.,*
   738 F. Supp. 227 (W.D. Mich. 1989) ..................................................................... 11

*Cormier v. Cent. Massachusetts Chapter of Nat. Safety Council,*
   416 Mass. 286, 620 N.E.2d 784 (1993) ............................................................ 12, 17

*Covich v. Chambers,*
   8 Mass. App. 740 (1979) ........................................................................................ 16

*Crellin Technologies, Inc. v. Equipmentlease Corp.,*
   18 F.3d 1 (1st Cir. 1994) .......................................................................................... 9

*DeLuca v. Bear Stearns & Co.,*
   175 F. Supp. 2d 102 (D. Mass. 2001) ...................................................................... 9

*Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.,*
   638 F.3d 367 (1st Cir. 2011) ......................................................................... 1, 7, 15

*Domenichetti v. Salter Sch.,*
   2013 WL 1748402 (D. Mass. Apr. 19, 2013) ............................................. 10, 11, 12

*Escobar-Noble v. Luxury Hotels Int'l of Puerto Rico, Inc.,*
  680 F.3d 118 (1st Cir. 2012) ............................................................. 7, 11

*Farnsworth v. Towboat Nantucket Sound, Inc.,*
  790 F.3d 90 (1st Cir. 2015) .................................................................. 8

*First Options v. Kaplan,*
  514 U.S. 938 (1995) ........................................................................... 15

*Gill v. Richmond Co-op. Ass'n,*
  309 Mass. 73, 34 N.E.2d 509 (1941) .................................................. 10

*Gilman v. Chase-Manhattan Bank, N.A.,*
  534 N.E.2d 824 (N.Y. 1988) ........................................................... 17-18

*Gove v. Career Sys. Dev. Corp.,*
  689 F.3d 1 (1st Cir. 2012) ............................................................... 7, 11

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
  561 U.S. 287 (2010) .................................................................. 1, 6-7, 8

*Harker v. City of Holyoke,*
  390 Mass. 555 (1983) ......................................................................... 13

*Hinchey v. NYNEX Corp.,*
  144 F.3d 134 (1st Cir. 1998) ..................................................... 10, 11, 12

*In re Maxwell,*
  281 B.R. 101 (Bankr. D. Mass. 2002) ............................................... 17

*InterGen N.V. v. Grina,*
  344 F.3d 134 (1st Cir. 2003) ............................................................... 6

*Jackson v. Action for Boston Cmty. Dev., Inc.,*
  403 Mass. 8, 525 N.E.2d 411 (1988) .......................................... 10, 11, 12

*Joule, Inc. v. Simmons,*
  2011 WL 7090714 (Mass. Super. Dec. 5, 2011) .................................. 12

*Kolbe v. BAC Home Loans Servicing, LP,*
  738 F.3d 432 (1st Cir. 2013) ............................................................... 14

*Kristian v. Comcast Corp.,*
  446 F.3d 25 (1st Cir. 2006) ........................................................... 19, 20

*Linan-Faye Const. Co. v. Hous. Auth. of City of Camden*,
   49 F.3d 915 (3d Cir. 1995) ........................................................................ 11

*Linguistic Sys., Inc. v. U.S. Pharmacopeial Convention, Inc.*,
   2009 WL 723343 (D. Mass. Mar. 11, 2009) .............................................. 19

*Luso-Am. Credit Union v. Cumis Ins. Soc., Inc.*,
   616 F. Supp. 846 (D. Mass. 1985) ............................................................ 14

*Machado v. System4 LLC*,
   471 Mass. 204, 28 N.E.3d 401 (2015) ................................................... 2, 20

*Ossers v. Litton Loan Servicing, LP*,
   2012 WL 4928874 (Mass. Super. Oct. 5, 2012) .................................... 16, 17

*Paul Revere Variable Annuity Ins. Co. v. Kirschhofer*,
   226 F.3d 15 (1st Cir. 2000) ....................................................................... 15

*Piccuirro v. Gaitenby*,
   20 Mass. App. Ct. 286, 480 N.E.2d 30, Mass. App. 1985 ........................... 4

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967) ................................................................................... 7

*Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   170 F.3d 1 (1st Cir.1999) ............................................................................ 8

*Schwartz v. Levensailor*,
   2002 WL 31103936 (Mass. Super. Sept. 16, 2002) ................................... 16

*Skirchak v. Dynamics Research Corp.*,
   508 F.3d 49 (1st Cir. 2007) .................................................................. 17, 18

*Small Justice LLC v. Xcentric Ventures LLC*,
   2015 WL 1431071 (D. Mass. Mar. 27, 2015) ............................................ 11

*Storie vs. Household Int'l, Inc.*,
   2005 WL 3728718 (D. Mass. Sept. 22, 2005) .............................................. 2

*Torncello v. United States*,
   681 F.2d 756 (Ct. Cl. 1982) ...................................................................... 11

*United Companies Lending Corp. v. Sargeant*,
   20 F.Supp.2d 192 (D. Mass. 1998) ........................................................... 16

*Vaks v. Ryan,*
  2014 Mass. App. Div. 37 (Dist. Ct. 2014) ............................................................. 16

*Waters v. Min Ltd.,*
  412 Mass. 64, 587 N.E.2d 231 (1992) ............................................................. 16, 17

*Williams v. Walker-Thomas Furniture Co.,*
  350 F.2d 445 (D.C.Cir.1965) ..................................................................................... 2

*Wrobel v. Gen. Acc. Fire & Life Assur. Corp.,*
  288 Mass. 206, 192 N.E. 498 (1934) ....................................................................... 14

*Zapatha v. Dairy Mart, Inc.,*
  381 Mass. 284, 408 N.E.2d 1370 (1980) .................................................... 1-2, 16, 18

## Statutes

45 U.S.C. § 5(a) ............................................................................................................. 4

9 U.S.C. § 2 .................................................................................................................. 15

M.G.L c. 93A ................................................................................................................. 4

M.G.L. c. 93A ................................................................................................................ 2

M.G.L. c. 93A § 2(b) ...................................................................................................... 4

## Regulations

16 C.F.R. § 251.1 ........................................................................................................... 4

16 C.F.R. § 251.1(c) ....................................................................................................... 4

## Other Authorities

3 *Williston on Contracts* § 7:7 (4th ed. 2008, Richard A. Lord ed.) ............................. 9

3 *Williston on Contracts* § 863 (rev. ed. 1936) ........................................................... 19

John D. Calamari & Joseph M. Perillo, *Contracts* § 4–17 (2d ed. 1977) ...................... 9

*Restatement (Second) of Contracts* § 77 (1981) ........................................................... 9

## I.       INTRODUCTION

DraftKings' argument that the Court must refer this case to arbitration depends on four propositions, all misplaced:  (1) that only an arbitrator can decide whether the DraftKings Terms of Use constitute a binding contract requiring arbitration; (2) that, even if this Court can decide the issue, the Terms of Use constitute a binding contract; (3) that the the Terms of Use are not invalid as unconscionable; and (4) that, if they constitute a contract and are not unconscionable, the Terms of Use prohibit Plaintiff from bringing this lawsuit in this Court. None of these propositions is correct, and DraftKings' motion must be denied.

*First*, in arguing that only an arbitrator can decide whether the Terms of Use constitute a valid contract, Defendant has it backwards.  A First Circuit case that DraftKings ignores, *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 376 (1st Cir. 2011), following a Supreme Court decision that DraftKings likewise ignores, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010), make clear that the court, not the arbitrator, must decide the issue of whether a contract requiring arbitration was formed.

*Second*, DraftKings' promises are illusory, and, therefore, no contract calling for arbitration was ever formed.  *See* First Amended Class Action Complaint ("Compl."), Doc. 11. ¶¶ 63-73, 146-153.  None of DraftKings' promises is binding because the Terms of Use allow it to revoke or amend them all unilaterally without notice, and they contain a provision releasing it from any liability or claim "whatsoever," rendering users powerless to hold DraftKings to any of its promises.  Thus, the Terms of Use are not a contract.

*Third*, even if that were not the case, the Terms of Use are both substantively and procedurally unconscionable.  They are substantively unconscionable because, in allowing DraftKings to revoke all of the users' rights and releasing DraftKings from all claims, the Terms of Use are "unreasonably favorable to the other party."  *Zapatha v. Dairy Mart, Inc.*, 381 Mass.

284, 294, n.13 408 N.E.2d 1370, 1377 (1980), *quoting Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C.Cir.1965).  They are procedurally unconscionable because Plaintiff "had no meaningful choice and was subject to unfair surprise."  *Machado v. System4 LLC*, 471 Mass. 204, 218, 28 N.E.3d 401, 414 (2015), *quoting Storie vs. Household Int'l, Inc.,* 2005 WL 3728718 (D. Mass. Sept. 22, 2005).

*Finally*, even if none of that were true, the Terms of Use not only would not bar this lawsuit from being brought in this Court, they would ***require*** it, notwithstanding the separate provision that purports to require that disputes be brought in arbitration or in small claims court.  Compl. ¶¶ 70-72.  The provision requiring court adjudication of disputes cannot be reconciled with the one requiring arbitration.  Since DraftKings is the drafter of the Terms of Use, this inconsistency must be interpreted adversely to it under the doctrine of "*contra proferentem.*"

## II.   NATURE OF THE CASE

Plaintiff James Gardner brought this lawsuit under M.G.L. c. 93A and, on behalf of consumers in other states, the consumer protection statutes of those states, to redress deceptive and unfair business practices of DraftKings, a fast-growing operator of on-line daily fantasy sports contests.  Consumers pay to play DraftKings' games in hopes of winning cash prizes.  To lure them, DraftKings represents that it will double their first deposit of money with what it variously describes as a "Free Bonus" (Compl. ¶ 33), "Free Offer" (*id.* ¶ 30), "100% First-Time Deposit Bonus" (*id.*), and **DOUBLE YOUR CASH**" bonus (*id.* ¶¶; emphasis in DraftKings' advertisements).  *See generally id.* ¶¶ 21-42.  It makes these representations in on-line and broadcast advertising and on its website.  *Id.*  One ad states:  "[P]ut in one-hundred bucks, you get two hundred to play with.  Put in three hundred, and get six hundred.  Put in six hundred, and get twelve hundred."  *Id.* ¶ 26.

DraftKings even tells consumers about this bonus at the moment they make their first payment by clicking a box on its Deposit page, as shown in this screenshot (*Id.* ¶ 34):



As can be seen, there is an asterisk by "**DOUBLE YOUR CASH,**" but the footnote and the pages to which it links do not explain what actually happens upon the deposit of money. *Id.* ¶¶ 35-42. Only after they click a box and pay money do users learn that instead of seeing their money double, they get only 4% of their deposit or less. *Id.* ¶¶ 45-46. So rather than put in $100 and get $200 to play with, it is really "put in $100 and get $104 to play with." To "earn" their full bonus, they must spend more money in additional contests, getting 4% each time, until either the bonus totals the original deposit or four months go by, whichever comes first. *Id.* ¶¶ 47-56. Thus, a participant has to pay 25 times the initial deposit within four months to obtain the promised "100% First-Time Deposit Bonus" or "**DOUBLE YOUR CASH**" bonus. *Id.* ¶¶ 47-56. For Plaintiff, that would have meant spending $250 within four months to obtain the promised $10 (in other words, "put in $250 in four months and get $260 to play with"). *Id.* ¶ 55.

Though this motion does not depend on whether Plaintiff's claim is valid, Defendant argues against it anyway. *See* Def's. Mem. of Law in Supp. of Motion to Compel Arbitration ("Def's. Mem."), Doc. 19, at 1. DraftKings states that it "spelled out" the terms before the deposit. *Id.* That is not true. *See* Compl. ¶¶ 32-44. Nor does Plaintiff allege that he should have been able to "withdraw [the bonus] without having to participate in any contests," as DraftKings

states.  Def's. Mem. at 1.  Plaintiff's claim is that users were not given the bonus to use in

contests, precisely what was promised.  *See, e.g,* Compl. ¶ 26.  DraftKings also falsely states that

Plaintiff's complaint is that he did not get the bonus "***immediately*** upon his deposit."  (Def's.

Mem. at 1; emphasis in original.)  But the issue is not the timing.  DraftKings did not just wait; it

made the bonus contingent on paying more money.

Plaintiff alleges that these actions are deceptive and unfair under M.G.L. c. 93A.  *Id.* ¶¶

111-113, 118-119, 126-133.  Plaintiff also alleges that DraftKings contravened the Federal Trade

Commission's interpretation of § 5(a) of the FTC Act, 45 U.S.C. § 5(a), which is incorporated in

c. 93A, M.G.L. c. 93A § 2(b), by violating  the FTC's Guide Concerning Use of the Word "Free"

and Similar Representations.  That Guide is codified in the Code of Federal Regulations, 16

C.F.R. § 251.1.  Compl. ¶¶ 128-29.  It states that "all the terms, conditions and obligations upon

which receipt and retention of the 'Free' item are contingent should be set forth clearly and

conspicuously at the outset of the offer so as to leave no reasonable probability that the terms of

the offer might be misunderstood."  16 C.F.R. § 251.1(c).  Moreover, even if the footnote

mentioned above had adequately described the conditions to which the "free" offer was subject,

that would not have been sufficient.  "[D]isclosure of the terms of the offer set forth in a footnote

of an advertisement to which reference is made by an asterisk or other symbol placed next to the

offer, is not regarded as making disclosure at the outset."  *Id.*

In addition, Plaintiffs allege that Defendant's practices are unethical, Compl., ¶ 52, and

for support cite ethical principles recognized by the Direct Marketing Association, the leading

industry association for companies that, like Defendant, market to consumers.  *Id.* ¶¶ 53-59.

Chapter 93A includes unethical practices within its prohibitions of unfairness.  *Piccuirro v.

Gaitenby*, 20 Mass. App. Ct. 286, 290, 480 N.E.2d 30, 33 (Mass. App. 1985).

Plaintiffs also seek a declaratory judgment that DraftKings' Terms of Use do not constitute a binding agreement, are an illusory agreement, and are unconscionable and void. Compl., Count VII.  When a user registers with DraftKings, he or she must click a box agreeing to the Terms of Use, which are available with a link.  Decl. of Tim Dent, Doc. 20, ¶ 3.  Those Terms of Use are not negotiable.  Compl. ¶ 74.  As presented on the DraftKings website, they contain a maze of fine print with nearly 6,000 words in single-spaced tiny print.  *Id*. ¶ 60 and Ex. G thereto.  They also inconsistently provide that they constitute an agreement with DraftKings and that the Terms of Use, DraftKings Privacy Policy, and the Rules of the contests together constitute "the Agreement."  Compl. ¶ 62.

But whatever makes up what DraftKings claims to be "the Agreement," it does not bind DraftKings to anything.  The Terms of Use reserve to DraftKings the right to deny service to any user for any reason "whatsoever," the right without prior notice to revoke any or all rights of the user, and the right to amend them at any time without notice.  *Id.* ¶¶ 66-69.  Thus, although the Terms of Use contain a provision that purports to require each party to submit any claims to arbitration, DraftKings reserves to itself the right to modify away any of its obligations with no notice to the user, and indeed to revoke all of its own promises and deny any or all rights of the user, again with no notice.  *Id.* ¶¶ 66-69.  In addition, the Terms of Use provide that the user releases DraftKings and its representatives from any and all liability, claims or actions "of any kind whatsoever."  *Id.* ¶¶ 64-65.  Thus, DraftKings could refuse to perform any or all of its purported obligations, including its obligation to pay any prize money "whatsoever," leaving the user with no recourse to obtain redress for breach of this purported "contract."

At the same time, the Terms of Use provide inconsistently that any disputes must be decided exclusively by a court of competent jurisdiction in Suffolk County, Massachusetts, and

5

that they must be decided exclusively in arbitration or a small claims court.  One term states:

"*Any* claim or dispute between you and DraftKings that arises in whole or in part from the Terms of

Use, the Website or any Contest shall be decided *exclusively by a court of competent jurisdiction*

*located in Suffolk County, Massachusetts*."  *Id.* ¶ 72 (emphasis added).  Another term states:

> Any and all disputes, claims or controversies arising out of or relating to this
> Agreement, the breach thereof, or any use of the Website (including all
> commercial transactions conducted through the Website) ("Claims"), except for
> claims filed in a small claims court that proceed on an individual (non-class, non-
> representative) basis, shall be settled by binding arbitration ….

*Id.* ¶¶ 71.

Defendant has not yet formally responded to any of these allegations.  Its motion relates

only to its contention that the court must refer the case to arbitration and even then it does not

directly address Plaintiffs' Count VII seeking a declaratory judgment that the purported

agreement is illusory (other than simply to mention it; Defs. Mo at 4).

## III.   LEGAL STANDARD

Defendant bears the burden to establish the basis of its motion.  As the moving party, it

must show "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the

arbitration clause, that the other party is bound by that clause, and that the claim asserted comes

within the clause's scope."  *Braintree Labs., Inc. v. Citigroup Global Markets, Inc.*, 671 F. Supp.

2d 202, 205 (D. Mass. 2009), *aff'd in part, appeal dismissed in part,* 622 F.3d 36 (1st Cir. 2010),

*quoting InterGen N.V. v. Grina,* 344 F.3d 134, 142 (1st Cir. 2003).

## IV.   ARGUMENT

### A.  Whether the Terms of Use Are a Binding Contract Is an Issue for the Court

Decisions of both the Supreme Court and the First Circuit make clear that the question of

whether a contract containing an arbitration provision exists is for the court, not an arbitrator.  In

*Granite Rock*, the Supreme Court stated, "It is similarly well settled that where the dispute at

issue concerns contract formation, the dispute is generally for courts to decide."  561 U.S. at 296.

Reviewing prior Supreme Court decisions, *Granite Rock* went on to state that the Court had

"compelled arbitration of a dispute only after the Court was persuaded that the parties'

arbitration agreement was validly formed and that it covered the dispute in question and was

legally enforceable."  *Id.*, 561 U.S. at 300.  The proponent of arbitration in that case relied, as

does DraftKings (Def.'s Mem. at 8), on *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440

(2006), but the *Granite Rock* Court distinguished that case on the ground that "the formation of

the parties' arbitration agreement was not at issue …." *Granite Rock Co*, 561 U.S. at 300.

Since *Granite Rock*, the First Circuit has repeatedly ruled that the court must decide

issues of contract formation.  *See Escobar-Noble v. Luxury Hotels Int'l of Puerto Rico, Inc*., 680

F.3d 118, 121-22 (1st Cir. 2012) ("[A] court should not compel arbitration unless and until it

determines that the parties entered into a validly formed and legally enforceable agreement

covering the underlying claim(s).");  *Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 6 (1st Cir.

2012) (presumption of arbitrability applies only after court determines that the "arbitration

agreement [was] 'validly formed and enforceable' under state law …."  [Citations omitted.]).

Moreover, in *Dialysis Access*, 638 F.3d at 376, the First Circuit rejected the same argument that

DraftKings makes here – that arbitration should be compelled because "Appellants have not

specifically challenged the validity of the Arbitration Clause but rather have only challenged the

validity of the MSA [the contract] in which the Arbitration Clause was included …." *See* Def's.

Mem. at 8.  Just as DraftKings does here (*Id.*), the proponent of arbitration in that case relied for

that proposition on *Buckeye* and *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395

(1967),  But the First Circuit rejected that argument, followed *Granite Rock,* and ruled that the

court must decide the issue of contract formation.

DraftKings nevertheless contends that whether a contract exists is an issue only for the arbitrator because AAA rules give the arbitrator the authority to rule on his or her jurisdiction, including deciding on the validity of the arbitration agreement.  Def.'s Mo. at 7-8.  For that proposition, DraftKings misstates the pre-*Granite Rock* holding in *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 10 (1st Cir. 2009).  Def's. Mem. at 7-8.  Despite the language regarding the AAA rules that DraftKings quotes, the First Circuit held that the court must decide "whether the arbitration remedy in this case is illusory."  *Id.*, 554 F.3d at 13.  In a later appeal in that litigation, the First Circuit ruled that "the district court was correct, as to this different group of plaintiffs, to address the 'predecessor question of whether there was an agreement at all to arbitrate.'" *Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 42 (1st Cir. 2012), *quoting Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1, 19 (1st Cir.1999).

Nor does *Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, 96-97 (1st Cir. 2015), overrule these principles.  *See* Def's. Mem. at 8.  In ruling that the arbitrator is to decide the ***validity*** of the contract, the court was not referring to contract formation.  It was referring to the plaintiff's claim "that he was induced to sign the contract by an improper threat on the part of [the defendant]."  *Farnsworth*, 790 F.3d at 97.  The court pointedly stated that this claim, "if true, would make the contract invalid, but it would ***not mean that no contract was ever formed***." *Id.*, 790 F.3d at 97 (emphasis added).  The issue of contract formation remains for the court.

Accordingly, this court must decide whether the Terms of Use constitute a contract.

### B.  DraftKings Has Not Established That Its Promises Were Anything But Illusory, and Therefore Has Not Shown That the Terms of Use Are a Contract

DraftKings' Terms of Use clearly are not a binding contract because DraftKings' promises are illusory and DraftKings provided no consideration.  This is a matter of clear black-letter law.  "[W]here the promisor may perform or not, solely on the condition of his whim, his

promise will not serve as consideration." 3 *Williston on Contracts* § 7:7 at 111-112 (4th ed. 2008, Richard A. Lord ed.). "[I]n any case where a promise in terms or in effect provides that the promisor has a right to choose one of two alternatives, and by choosing one will escape without suffering a detriment or offering the other party a benefit, the promise is not consideration." *Id.* at 133. That is what the Terms of Use do by allowing DraftKings to choose either to fulfill its promises or, in the alternative, to revoke or amend them. Thus, to quote from *Williston*, DraftKings "may perform or not, solely on the condition of [its] whim." *Id.* Similarly, Comment *a* to the *Restatement (Second) of Contracts* § 77 (1981) states, "Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise."

This principle is recognized by Massachusetts courts and the First Circuit. *See Crellin Technologies, Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 8 (1st Cir. 1994) ("[B]oth parties to a bilateral contract must have made more than illusory promises for the agreement to be binding." (*citing* John D. Calamari & Joseph M. Perillo, *Contracts* § 4–17, at 160 (2d ed. 1977).)); *DeLuca v. Bear Stearns & Co.*, 175 F. Supp. 2d 102, 112 (D. Mass. 2001) ("However, a promise that binds one to do nothing at all is illusory and cannot be consideration.").

Under that standard the Terms of Use are an illusory contract. In the language of the *Restatement*, DraftKings' words of promise make its performance optional and therefore do not constitute a promise. The Terms of Use permit it to deny service to users for any reason "whatsoever" (Compl. ¶ 66) and even, without prior notice, to "revoke any or all of [their] rights granted hereunder." *Id.* ¶ 67.[1] They also reserve to DraftKings the right to amend the agreement without notice. Compl. ¶¶ 68-69. Thus, to take one obvious example, DraftKings could change

---

[1] Certain provisions survive termination, but they are all provisions that benefit DraftKings, specifically ownership provisions, warranty disclaimers, indemnity and limitations of liability. Compl., Ex. G.

the arbitration provision at any time without notice to any user who had asserted a claim.

Even more than that, under the Terms of Use the user releases DraftKings and its representatives from any and all liability, claims or actions "of any kind **whatsoever**."  Compl. ¶¶ 64-65 (emphasis added).  What then is to hold DraftKings to any of its promises?  If DraftKings failed to pay a winner his or her prize money, the winner would have no remedy.  Or Plaintiff could take DraftKings to arbitration, DraftKings could fail to show up, the arbitrator could award damages, and then … nothing.  Plaintiffs would have released DraftKings from that claim, and all other claims – if the Terms of Use were binding.  But a purported agreement that, by its very terms is not enforceable, is hardly binding.  It is simply not a contract.

These provisions are similar to those that Massachusetts courts have found to render contracts illusory.  In the leading case of  *Gill v. Richmond Co-op. Ass'n*, 309 Mass. 73, 80, 34 N.E.2d 509, 513-14 (1941), a promise to buy only "such milk as [the promisors] might order" was not consideration because "[t]he only measure of their promise was their own will."  In *Domenichetti v. Salter Sch.*, 2013 WL 1748402, at *7 (D. Mass. Apr. 19, 2013), the defendant, like DraftKings here, retained the right to modify the terms of a dispute resolution provision. "Defendants thus had the power to require plaintiff to arbitrate the covered dispute, while simultaneously reserving the right to modify the agreement.  Such an agreement is not enforceable." *Accord*, *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 142 (1st Cir. 1998) ("Further, there was an explicit disclaimer, in which NYNEX retained the right to unilaterally modify the [alleged contract].");  *Jackson v. Action for Boston Cmty. Dev., Inc.*, 403 Mass. 8, 14-15, 525 N.E.2d 411, 415 (1988) ("It is undisputed that the defendant retained the right to modify unilaterally the personnel manual's terms. This tends to show that any 'offer' made by the defendant in distributing the manual was illusory.")

The provision that purports to release DraftKings from any claim "whatsoever" is another

reason the Terms of Use do not constitute an agreement. As the First Circuit has stated, an agreement must be "enforceable" before arbitration is ordered. *Gove*, 689 F.3d at 6; *Escobar-Noble*, 680 F.3d at 121-22. And courts in other jurisdictions have held that such provisions render the contract illusory because of the inability of the other party to enforce the promisor's agreement. In *Commercial Movie Rental, Inc. v. Larry Eagle, Inc.*, 738 F. Supp. 227, 230-31 (W.D. Mich. 1989), the court ruled that a contract provision exempting one party "from all liability for a breach of its obligations" made the contract illusory "because, under the unambiguous terms of the contract it drafted, Commercial could never be held liable for the failure to perform those promises." Similarly, in *Torncello v. United States*, 681 F.2d 756, 760 (Ct. Cl. 1982), the court stated, "We note as one of the most elementary propositions of contract law that a party may not reserve to itself a method of unlimited exculpation without rendering its promises illusory and the contract void." This is hornbook law. *Linan-Faye Const. Co. v. Hous. Auth. of City of Camden*, 49 F.3d 915, 924 (3d Cir. 1995).

In the face of those clear, well-established principles, the cases DraftKings cites are off-point. It offers *Small Justice LLC v. Xcentric Ventures LLC*, 2015 WL 1431071 (D. Mass. Mar. 27, 2015), for the proposition that a right to modify a contract unilaterally without notice does not render a contract illusory if the party did not actually amend the contract. Def's. Mem. at 11 n. 4 and 12. But the court there described the plaintiffs' argument on this issue as "cursory," and it relegated its statement to a footnote. *Id.*, 2015 WL 1431071, at *8 n. 3 ("The Plaintiffs make a cursory argument that the [sic] any contract between DuPont and Xcentric was illusory because Xcentric reserved the right to change the terms and conditions."). But even if that case could somehow overrule the contrary decisions in *Domenichetti*, *Hinchey* and *Jackson*, where the courts ruled that a right to amend without notice meant that no contract had ever been formed in the first place, here there is much more than a right to amend without notice; there is the right to deny service

11

for any reason "whatsoever," the right to revoke all rights of the user and the release of any claim "whatsoever." If nothing else, all of those together show that DraftKings' promises are illusory.

DraftKings also cites *Joule, Inc. v. Simmons*, 2011 WL 7090714 (Mass. Super. Dec. 5, 2011), where a state trial judge rejected the argument that a right to modify the contract did not make it **unconscionable**, and even then the court regarded it as a close question. But there apparently was no argument that no contract had ever been formed to begin with. *Id.*, at *5. Similarly, *Cormier v. Cent. Massachusetts Chapter of Nat. Safety Council*, 416 Mass. 286, 286-87, 620 N.E.2d 784, 785 (1993), which DraftKings cites for the proposition that the release of liability does not make a contract unconscionable, did not deal with the issue of contract formation. The issue there was not whether a release of all claims "whatsoever" rendered a contract illusory, but whether a "motorcycle safety course waiver form" could "bar a claim in **negligence** without specifically mentioning that word." *Id.* at 288 (emphasis added).

DraftKings also argues that the right to amend without notice does not make the contract illusory because the user could always "discontinue using the service and thereby avoid any amendment he or she does not like." Def's. Mem. at 11. But, not only is that argument contrary to the decisions in *Domenichetti*, *Hinchey* and *Jackson*, it could be said about any illusory contract. *A* sues *B* for enforcement of a contract; *B* says *A*'s performance is illusory because *A* can amend without notice (or even just stop performing), and *A* responds, "If I do any of those things, you can just back out, and in the meantime you have to perform." But that is not the point of the illusory-contract doctrine. The issue is not whether the breaking of a promise by one party to a contract justifies the other party in abandoning the contract or breaking his or her own promises. Of course, it does. The issue here is whether a contract was formed in the first place. If a promise is illusory, there is no contract. Period.

### C.  The Terms of Use Require that Any Claim Be Asserted in a Court of Competent Jurisdiction

Even if the Terms of Use constitute a contract, they do not prevent Plaintiff from bringing this case in this Court.  To the contrary they require it.  They state:  "Any claim or dispute between you and DraftKings that arises in whole or in part from the Terms of Use, the Website or any Contest shall be decided exclusively by a ***court of competent jurisdiction*** located in Suffolk County, Massachusetts."  Compl. ¶ 72 (emphasis added).  A "court of competent jurisdiction" is "one 'recognized by law as possessing the right to adjudicate the controversy.'"  *Harker v. City of Holyoke*, 390 Mass. 555, 560 (1983), *quoting Almeida v. Travelers Ins. Co.*, 383 Mass. 226, 230 (1981).  That provision therefore cannot be reconciled with the arbitration provision, which states that "any and all" disputes or claims, "except for claims filed in a small claims court that proceed on an individual (non-class, non-representative) basis, shall be settled by binding arbitration …."  *Id.* ¶ 71 (showing the provision in a screenshot).

DraftKings calls the "court-of-competent-jurisdiction" provision "subordinate" (Def's. Mem. at 13), but there is nothing subordinate about it, unless "subordinate" means "later on in the document."  The two provisions are actually located in two separate sections.  Nothing in the Terms of Use indicates that priority is to be given to provisions that occur earlier on.

DraftKings also attempts to reconcile the two provisions in light of the arbitration provision's allowance of proceedings in small claims court.  Def.'s Mem. at 13 ("the arbitration provision recognizes that certain claims will not be subject to arbitration (***such as*** individual small claims actions)" (emphasis added)).  But there is no "such as" about it.  The ***only*** court proceeding that the arbitration provision purports to allow is one in small claims court.  That is simply inconsistent with the court-of-competent-jurisdiction provisions.

Nevertheless, DraftKings attempts to reconcile the two.  It maintains that the court-of-

competent-jurisdiction provision relates only to "claims not subject to the immediately preceding arbitration provision." *Id.* at 13-14.  But that interpretation makes no sense because there are no claims not subject to the arbitration provision.  The arbitration provision purports to cover all possible disputes.  If small enough, they can be brought in small claims court.  If not, they must be brought in arbitration.  The court-of-competent-jurisdiction provision cannot mean some other kind of dispute because there isn't any.  "Every word and phrase [in a contract] must be presumed to have been employed with a purpose …."  *Wrobel v. Gen. Acc. Fire & Life Assur. Corp.*, 288 Mass. 206, 209-10, 192 N.E. 498, 500 (1934).  But Defendants' interpretation would read the court-of-competent-jurisdiction provision out of the contract entirely.

Moreover, if DraftKings, as the drafter, meant the court-of-competent-jurisdiction provision to refer to a dispute not covered by the arbitration provision (assuming it could think of something that would qualify), there was nothing to stop it from saying so explicitly and making the sentence, "Any claim or dispute between you and DraftKings that arises in whole or in part from the Terms of Use, the Website or any Contest ***and that is not covered by the arbitration provision*** shall be decided exclusively by a court of competent jurisdiction located in Suffolk County, Massachusetts."  But it did not.  The court-of-competent-jurisdiction provision, by its terms, is all-encompassing, just like the arbitration provision.

Thus, these provisions cannot be reconciled.  The Terms of Use are simply ambiguous on where disputes must be adjudicated.  An ambiguity in a contract must be construed against the drafter.  *Luso-Am. Credit Union v. Cumis Ins. Soc., Inc.*, 616 F. Supp. 846, 848 (D. Mass. 1985) ("[T]he standard rule of construction that ambiguous language in a contract should be construed against the drafter applies.")  This is known as the doctrine of "*contra proferentem*," *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 460 (1st Cir. 2013), and it is equally applicable

14

to ambiguities between arbitration and non-arbitration provisions as for other ambiguities.  As the First Circuit held, "the federal policy favoring arbitration does not totally displace ordinary rules of contract interpretation. Thus, numerous courts have employed the tenet of *contra proferentem* in construing ambiguities in arbitration agreements against the drafters." *Paul Revere Variable Annuity Ins. Co. v. Kirschhofer*, 226 F.3d 15, 25 (1st Cir. 2000).[2]  Accordingly, interpreting the irreconcilable ambiguity between the arbitration provision and the court-of-competent-jurisdiction provision against DraftKings, this dispute must be brought in court.

### D.  DraftKings' Terms of Use Are Both Substantively and Procedurally Unconscionable

Even if the Terms of Use constitute a contract, they are invalidated by unconscionability based on general contract principles.  The Arbitration Act provides that an agreement in writing to submit a dispute to arbitration is valid and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as … unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).  Whether the exceptions in the statute apply is a matter for the court before deciding whether to send the case to arbitration.  *Dialysis Access*, 638 F.3d at 376 (court must be "persuaded that … the arbitration agreement is not otherwise subject to revocation" before submitting dispute to arbitration).

---

[2] Courts have also held that ambiguities in the **scope** of an arbitration provision should be interpreted in favor of arbitration.  However, that does not help DraftKings.  As the First Circuit stated in *Paul Revere*, "[a] scope question arises 'when the parties have a contract that provides for arbitration of some issues" and it is unclear whether a specific dispute falls within that contract."  226 F.3d 15 at 25, *quoting First Options v. Kaplan*, 514 U.S. 938, 945 (1995).  But in *Paul Revere*, the issue was whether the party had a right to arbitrate at all, and therefore the ambiguity was decided against the drafter, not in favor of arbitration.  Similarly, here the ambiguity is whether the Terms of Use require that claims be brought in court or in arbitration, not whether any particular dispute falls within the arbitration provision.

Under Massachusetts law, both substantive unconscionability (the terms are oppressive to one party) and procedural unconscionability (the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise) must be present for the terms to be found unconscionable.  *United Companies Lending Corp. v. Sargeant*, 20 F.Supp.2d 192, 206 (D. Mass. 1998); *Zapatha,* 381 Mass. at 292–93, 294 n. 13, 408 N.E.2d 1370.  "If the sum total of the provisions of a contract drive too hard a bargain, a court of conscience will not assist its enforcement."  *Waters v. Min Ltd.*, 412 Mass. 64, 68, 587 N.E.2d 231, 233 (1992), *quoting Covich v. Chambers,* 8 Mass. App. 740, 750 n. 13 (1979).

Draftkings devotes only three paragraphs to the unconscionability issue (Def.'s Mem. at 14-15), and two of them argue against contentions Plaintiff does not even make:  That an arbitration provision is inherently unconscionable (1st paragraph, Def.'s Mem. at 14) and that a class action waiver is inherently unconscionable (2nd paragraph, Def.'s Mem. at 14-15).  At the same time, Draftkings simply ignores whether aspects of substantive and procedural unconscionability affect the Terms of Use.  However, the Terms of Use are unconscionable under both elements.

  **1. The Terms of Use Are Substantively Unconscionable Because They Are Completely One-Sided in that DraftKings Can Revoke All User Rights and Users Are Unable To Bring Any Claim To Enforce The Agreement**

Substantive unconscionability occurs when contract terms are unreasonably favorable to one party.  *Ossers v. Litton Loan Servicing, LP*, 2012 WL 4928874, at *9 (Mass. Super. Oct. 5, 2012).  Examples of contract terms found to be substantively unconscionable are a provision that one party would pay the other's attorney's fees in any lawsuit arising out of the contract, no matter who won, *Vaks v. Ryan*, 2014 Mass. App. Div. 37 (Dist. Ct. 2014); an acceleration clause that includes payment for unearned interest, *Schwartz v. Levensailor*, 2002 WL 31103936, at *4 (Mass. Super. Sept. 16, 2002); a refinancing in which the debtor received no additional value, *In*

*re Maxwell*, 281 B.R. 101, 131 (Bankr. D. Mass. 2002); and a gross disparity in the values

exchanged, *Waters*, 412 Mass. at 69, 587 N.E.2d at 234 (1992).

Here, the Terms of Use fail for even stronger reasons.  Although they purport to give

users certain rights, DraftKings reserves the right to revoke any or all of them.  Compl. ¶ 67.  It

can amend the contract at will.  *Id.* ¶ 68.  Perhaps even worse, another provision releases

DraftKings and related individuals from any liability, claims or actions "of any kind

whatsoever."  *Id.* ¶¶ 64-65.  As a result, there is nothing to hold DraftKings to any of the

obligations it purports to undertake, including the arbitration provision.  It is hard to imagine a

more one-sided contract.  There is not only a "gross disparity" in the values exchanged; Plaintiff

received no value at all.

In arguing that the Terms of Use are not unconscionable, DraftKings cites *Cormier*, 416

Mass. at 288, 620 N.E.2d at 786 (1993), claiming a release of liability does not render a contract

unconscionable.  But as mentioned previously, that case dealt with a limited release "from

liability which [the defendant] might subsequently incur as a result of its own negligence" in the

face of the plaintiff's claim that she did not realize it included negligence.  *Id.*  The case did not

deal with a release from a breach of that very contract, one that would render the defendant's

promises meaningless.  When waiver of the statutory right to bring a class action is at issue,

Massachusetts courts require that the waiver be both knowing and voluntary.  *Skirchak v.*

*Dynamics Research Corp.*, 508 F.3d 49, 60 (1st Cir. 2007).  Neither was present here.

### 2.  The Terms of Use Are Procedurally Unconscionable Because Plaintiff Had No Meaningful Choice and Was Subject to Unfair Surprise

Procedural unconscionability "requires an examination of the contract formation process

and the alleged lack of meaningful choice."  *Ossers v. Litton Loan Servicing, LP*, 2012 WL

4928874, at *9, *quoting Gilman v. Chase-Manhattan Bank*, N.A., 534 N.E.2d 824, 829 (N.Y.

1988).  To determine if an arbitration and class action waiver is procedurally unconscionable, Massachusetts courts will look to see if the terms are obscure or buried in the fine print of a contract.  *Zapatha*, 381 Mass. at 293.  Courts also review the language to determine if it is prominent and clear.  *See Skirchak*, 508 F.3d at 60-61 (finding unconscionable a class action waiver hidden in two paragraphs in a multi-page appendix to a fifteen-page document).

As Plaintiffs accurately alleged and as Ex. G, Doc. 11-7, shows, DraftKings' arbitration provision is hidden in a maze of text more than three-quarters of the way through a document consisting of 6,000 words in single-spaced tiny print.  Compl. ¶¶ 60, 71.  Moreover, arbitration is not referred to anywhere else in the Terms of Use besides that one section, nor anywhere else on DraftKings' website, including on pages that refer to the Terms of Use.  There is no opt-out provision, nor any opportunity for the user to negotiate its terms.  And far from being written simply and in understandable English, the first sentence of the arbitration section contains 84 words.  *Id.* ¶ 71.  (The first sentence of the release of liability is even worse, with 125 words.  *Id.* ¶ 65.)  The arbitration provision uses such non-plain English terms as "thereof," "non-class, non-representative," "then governing rules and regulations" (which are not further described), "waive," "any court having jurisdiction thereof," "construed," "et seq.," "courts of competent jurisdiction," and "herein agreed."  A lawyer might understand it (ignoring the contradictions described below), but this is not aimed at lawyers, and it is the antithesis of clear language.

These Terms of Use also contain internal inconsistencies that render them impossible to understand, even by lawyers.  Although Plaintiffs are unaware of any direct precedent involving such inconsistencies (most likely because who would ever draft Terms of Use this way?), an agreement this confusing is certainly unconscionable for being difficult to understand.  Here it is unclear whether the purported agreement consists of the Terms of Use by themselves or the

18

Terms of Use in combination with DraftKings' Privacy Policy and the rules of the contests. Compl. ¶ 62.  Worse than that, the Terms of Use inconsistently limit where claims must be brought, whether in a court of competent jurisdiction and or in arbitration.  *Id.* ¶¶ 72.

### 3. Severing the Unconscionable Provisions Is Not Possible Because Fundamental Elements of the Arbitration Provision Are at Issue

DraftKings' main argument against unconscionability is that the Court can simply strike unconscionable terms – which ones it does not identify – and leave the arbitration provision.  But contrary to DraftKings' contention, severance is not automatic, as is clear from one of its cases, *Kristian v. Comcast Corp.,* 446 F.3d 25, 62 (1st Cir. 2006), where that court stated: "Typically, courts prefer declaring an arbitration agreement unenforceable rather than using severance as a remedy when fundamental elements of the arbitration regime are at issue."  The issue is whether the parties agreed to "a single whole," not whether they agreed to sever terms that might be found invalid, as the court stated in another of DraftKings' cases:

> [T]he essential test to determine whether a contract is entire or severable and divisible, it has been said, is simple. "It can be nothing else than the answer to an inquiry whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises was struck out.... The question essentially is one of fact: Did the parties give a single assent to the whole transaction or did they assent separately to several things?"

*Linguistic Sys., Inc. v. U.S. Pharmacopeial Convention, Inc.*, 2009 WL 723343, at *10 (D. Mass. Mar. 11, 2009), *citing American Surety Co. v. Rosenthal*, 206 Misc. 485, 133 N.Y.S2d 870, 874 (N.Y.Sup.Ct.1954), *quoting* 3 S. Williston *et al.*, *Williston on Contracts* § 863 (rev. ed. 1936).

Here, there is no basis for finding that the Terms of Use were intended as anything other than "a single whole …."  *Id.*  Would DraftKings have entered into the agreement without the release of liability or revocation provision, to cite two examples?  Presumably not, because it drafted the terms to include them.

Moreover, the cases DraftKings cites that ordered severance (Def.'s Mem. at 16-17) are

simply off-point.  In *Machado*, 471 Mass. at 220, 28 N.E.3d at 415-16, the plaintiffs identified

only one invalid term that did "not infect the arbitration clause as a whole."  In *Kristian,* 446

F.3d at 62, the invalid terms were limitations on the remedy (*e.g.,* no antitrust treble damages)

that did not affect the validity of the requirement to resolve disputes in arbitration.

DraftKings' Terms of Use, however, contain at least four unconscionable provisions that

"infect" the arbitration provision specifically:  1)  The release of liability renders arbitration

meaningless; 2) the term allowing DraftKings to revoke any or all user rights means it can take

away arbitration altogether; 3) the provision allowing it to amend the contract at will does the

same thing; 4)  the confusing contradiction between the court-of-competent-jurisdiction and

arbitration terms inherently infects arbitration.  These provisions therefore cannot be severed.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that this motion be denied.

Dated:  October 15, 2015                              Respectfully submitted,

By:   */s/ Kenneth J. DeMoura*                    By:   */s/ Emily Lisa Perini*
      Kenneth J. DeMoura                                Emily Lisa Perini
      BBO#: 548910                                      BBO #: 684103
      DEMOURA|SMITH LLP                                 PERINI-HEGARTY & ASSOCIATES, P.C.
      One International Place, 14th Floor               225 Franklin Street, 26th Floor
      Boston, MA 02110                                  Boston, MA 02110
      Office:  617.535.7531                             Office:  617.217.2832
      kdemoura@demourasmith.com                         elp@perinihegartypc.com


      Anthony S. Bruning, (*Pro Hac Vice*)             Richard S. Cornfeld (*Pro Hac Vice*)
      Anthony S. Bruning, Jr. (*Pro Hac Vice*)         LAW OFFICE OF RICHARD S.
      LERITZ, PLUNKERT & BRUNING, P.C.                 CORNFELD
      555 Washington Avenue, Suite 600                 1010 Market Street, Suite 1720
      St. Louis, MO 63101                               St. Louis, MO 63101
      Phone:  (314) 231-9600                           Phone:    (314) 241-5799
      Fax:    (314) 231-9480                           Fax:      (314) 241-5788
      abruning@leritzlaw.com                           rcornfeld@cornfeldlegal.com
      ajbruning@leritzlaw.com

                                                      ***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed
electronically with the Clerk of Court to be served by operation of the
Court's electronic filing system upon all Counsel of Record this 15th day of
October, 2015.

      */s/ Richard S. Cornfeld*